771 N.W.2d 894 (2009)
278 Neb. 485
THE LAMAR COMPANY, LLC, a Louisiana Limited Liability Company, doing business as The Lamar Companies, Appellant and Cross-Appellee,
v.
CITY OF FREMONT, a Municipality, et al., Appellees and Cross-Appellants, and
Nelsen Enterprises, Inc., a Nebraska Corporation, doing business as Victor Outdoor Advertising, Appellee.
No. S-08-590.
Supreme Court of Nebraska.
September 4, 2009.
*899 Amy S. Geren, of Geren Law, and, on brief, Aimee J. Haley, of Fullenkamp, Doyle & Jobeun, Omaha, for appellant.
Daniel J. Epstein and Michael F. Kinney, of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, for appellee City of Fremont.
Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, Fremont, for appellees Larsen International, Inc., et al.
David C. Mitchell, of Yost, Schafersman, Lamme, Hillis, Mitchell & Schulz, P.C., L.L.O., Fremont, for appellee Nelsen Enterprises, Inc.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF THE CASE
Appellant, The Lamar Company, LLC, doing business as The Lamar Companies (Lamar), had nonconforming billboard signs situated on land in Fremont, Nebraska, pursuant to periodic lease agreements with appellee landowners. In 2003, the Fremont city ordinances were amended to allow replacement of nonconforming signs, and the landowners leasing to Lamar discontinued their leases with Lamar and leased the space to a different sign company. Lamar filed an action in the district court for Dodge County against various landowners, entities, and the City of Fremont (the City). Lamar challenged the constitutionality of the ordinance and alleged that, although it was a mere lessee, it had a vested property right in the nonconforming structures and that this vested property right was not the landowners' to transfer. The district court generally found in favor of appellees on the merits. Lamar appeals, and certain appellees have filed cross-appeals. Because we conclude that Lamar lacked standing to challenge the constitutionality of the ordinance and that the rights to the nonconforming use run with the land, we reject Lamar's arguments on appeal. Further, we find no merit to some issues raised on cross-appeal and do not reach the substance of others. We, therefore, affirm the judgment entered by the district court.

STATEMENT OF FACTS
In 2001, Lamar acquired leaseholds on off-premise advertising signs in Fremont, including signs on property owned by the following appellees: Melvin Schwanke and Green Key II, Inc. (collectively Schwanke); Larsen International, Inc., John Larsen, and Michelle Larsen (collectively Larsen); and Fontanelle Hybrid Seed Co. and Nebraska Irrigated Seeds, LLC (collectively Fontanelle). Lamar purchased the signs from Bellows Outdoors. Bellows Outdoors had acquired the signs which were located on the Schwanke and Fontanelle properties in 1969, and built two signs at the Larsen property in 1991 and 1999. These signs became nonconforming with the adoption of the City's zoning code in the fall of 2000. The billboard signs were nonconforming when Lamar purchased them in 2001.
In 2002, Bruce Nelsen formed Nelsen Enterprises, Inc., doing business as Victor *900 Outdoor Advertising (Victor). In November and December 2002, Nelsen, on behalf of Victor, approached the owners of the Larsen and Schwanke properties and proposed to replace the nonconforming signs owned by Lamar. Also, in December 2002, Nelsen and Victor's attorney approached the City with proposed changes to the City's zoning code. Thereafter, an outside consultant drafted a proposed ordinance based on the changes suggested by Nelsen and Victor's attorney.
The proposed ordinance amended article 10, § 1003(h), of the Fremont city ordinances, which governed sign regulations. The proposed amendment allowed for the replacement of nonconforming signs, provided that the size of the new sign did not exceed the sign area of the existing sign which was being replaced and that the new sign structure utilized a monopole structure design. The new ordinance also repealed the 15-year sunset provision for nonconforming outdoor advertising signs. The issue of the amended ordinance was placed on the planning commission's agenda, and notices of the meetings were published.
From January through March 2003, the City's planning commission and the city council held public meetings regarding the requested changes to the City's zoning regulations. There is no dispute that notices of the time and place of the hearings were made consistent with state law. The City sent a letter to Lamar prior to the city council's March 25, 2003, hearing, enclosing a copy of the proposed revisions to the sign code. On March 25, the city passed ordinance No. 4032 and amended § 1003(h).
Prior to the enactment of ordinance No. 4032, Schwanke and Larsen entered into lease agreements with Victor to replace Lamar's signs. On June 6, 2003, Fontanelle entered into a lease with Victor to replace Lamar's sign. Beginning in April 2003, pursuant to ordinance No. 4032, Victor and the landowners applied to the City for replacement permits to allow Victor to replace Lamar's signs. The City issued the replacement permits.
Prior to the enactment of ordinance No. 4032, Lamar operated and maintained its nonconforming signs at each property by virtue of periodic lease agreements with appellee landowners. The parties agree that even before the March 25, 2003, passage of ordinance No. 4032, the landowners could have terminated Lamar's leases with appropriate notice. On March 28, Schwanke sent notice to Lamar via facsimile that Schwanke was terminating Lamar's leases. In June, Fontanelle notified Lamar that it was terminating its leases with Lamar in November. Larsen terminated its leases with Lamar in May and September of 2004.
Having received notice of the landowners' decisions to terminate the leases, Lamar removed its structures from appellee landowners' properties. After Lamar's leases were terminated, Victor erected signs replacing Lamar's signs. Lamar agrees that the leases were terminated by their terms, but argues that Victor did not have the right to erect new signs.
After removing its signs, Lamar brought this action in the district court for Dodge County alleging 14 causes of action, including constitutional challenges to ordinance No. 4032. Named as defendants, and appearing herein as appellees, were the following: the City, Victor, Larsen International, Melvin Schwanke, Fontanelle Hybrid Seed Co., American National Bank of Fremont, Green Key II, John Larsen, Michelle Larsen, and Nebraska Irrigated Seeds.
*901 On February 22, 2006, the district court entered an order granting partial summary judgment in favor of appellees and denying a partial summary judgment sought by Lamar. In its ruling, the court noted that when the leases were effectively and lawfully terminated, Lamar's nonconforming use rights for its signs were also extinguished.
The remaining matters came on for a hearing on October 26, 2006. On January 11, 2007, the district court entered an order granting the motions for summary judgment filed by appellees and denying the amended motions for summary judgment filed by Lamar. In its order, the district court held, inter alia, that ordinance No. 4032 was not arbitrary and capricious, nor was it facially unconstitutional. The court further concluded that Lamar did not have standing to challenge the validity of a facially constitutional ordinance on an "as applied" basis to signs that were no longer situated on the land. The district court denied Lamar's remaining claims.
Lamar appealed on February 6, 2007, in case No. A-07-144. On February 27, 2008, the Court of Appeals remanded the cause for lack of jurisdiction, because the district court had not entered an order on appellee landowners' motion for attorney fees. After entry of an order denying appellee landowners' request for attorney fees, Lamar once again appealed. Certain appellees have filed cross-appeals.

ASSIGNMENTS OF ERROR
We have summarized and restated certain of Lamar's assignments of error, which resolve this appeal. Lamar claims that the district court erred in (1) stating that "the right to maintain a nonconforming use does not depend upon ownership or tenancy of the land on which the use is situated. It is not personal to the current owner or tenant, but attaches to the land itself"; (2) concluding that Lamar lacked standing to assert an "as applied" challenge to ordinance No. 4032; (3) concluding that ordinance No. 4032 was constitutional on its face; (4) granting summary judgment in favor of appellees on Lamar's takings claims; (5) granting summary judgment in favor of appellees on Lamar's claim of constitutional impairment of Lamar's contracts or rights; (6) granting summary judgment in favor of appellee the City on Lamar's claim under 42 U.S.C. § 1983 (2006); (7) granting summary judgment in favor of appellee Victor on Lamar's claim of tortious interference with contract; and (8) granting summary judgment in favor of appellees on Lamar's conspiracy claim.
The cross-appellant landowners claim that Lamar's action was frivolous and that the district court erred by failing to award them attorney fees pursuant to Neb.Rev. Stat. § 25-824 (Reissue 2008).
Appellee the City, relying on statutes and case law, cross-appeals the district court's denial of its motion for summary judgment, based on its argument that it was immune from Lamar's suit. Given our resolution of Lamar's appeal, it is not necessary to reach this cross-appeal.

STANDARDS OF REVIEW
On a question of law, we reach a conclusion independent of the court below. Pierce v. Douglas Cty. Civil Serv. Comm., 275 Neb. 722, 748 N.W.2d 660 (2008).
Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a *902 jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court. In re Estate of Dickie, 261 Neb. 533, 623 N.W.2d 666 (2001).
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. OMNI v. Nebraska Foster Care Review Bd., 277 Neb. 641, 764 N.W.2d 398 (2009).
When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion. In re Estate of Chrisp, 276 Neb. 966, 759 N.W.2d 87 (2009).

ANALYSIS

The District Court's Ruling Is Consistent With the Legal Proposition That Nonconforming Use Rights Run With the Land.
For its first assignment of error, Lamar contends that the district court erred by stating that "the right to maintain a non-conforming use does not depend upon ownership or tenancy of the land on which the use is situated. It is not personal to the current owner or tenant, but attaches to the land itself." Given the substance of its ruling against Lamar, we understand the district court's statement to mean that the right to a nonconforming use runs with the land and we agree with the legal proposition.
While this court has not previously addressed the issue, upon review of the jurisprudence of other jurisdictions and the treatises addressing nonconforming use rights, we are persuaded that the right to maintain a legal nonconforming use "runs with the land," meaning it is an incident of ownership of the land, and is not a personal right. Therefore, a change in the ownership or tenancy of a nonconforming business or structure which takes advantage of the nonconforming rights does not affect the current landowner's right to continue the nonconforming use. See 83 Am.Jur.2d Zoning and Planning § 587 (2003). See, also, Budget Inn of Daphne v. City of Daphne, 789 So.2d 154 (Ala.2000); S & S Auto Sales v. Zoning Bd. of Adjustment for Stratford, 373 N.J.Super. 603, 862 A.2d 1204 (2004). The rationale for this rule is amply explained in 4 Rathkopf's The Law of Zoning and Planning § 72:20 at 72-56 (Edward H. Ziegler, Jr., ed. 2005), which states:
It is obvious that if the right to continue a nonconforming use were not considered one of the "bundle of rights" which together constitute the attributes of ownership of the land, exercisable by [a landowner who] had the possessory interest therein, it would prevent a purchaser [of the land] from using the land for any purpose other than one permitted by the ordinance in effect at the time of transfer. The owner of the land would be unable to sell all of his rights in the land and in the use thereof, and, being out of possession of the land, could not exercise the right to the nonconforming use.
*903 Lamar contends that while the nonconforming use rights may "run with the land," the rights vest in the individual or entity currently using those rights and that, therefore, once such use is terminated, the legal nonconforming rights remain with the individual or entity which had used the nonconforming right and such rights cannot be transferred without the authority of this individual or entity. We believe Lamar's proposed proposition of law is not sound. Indeed, such a holding could lead to the very problem identified in the Rathkopf treatise, wherein a landowner is divested of the ability to transfer the nonconforming use rights associated with his or her real property and, further, the proposed purported owner of the nonconforming use rights, having been separated from the real property on which the nonconforming rights had been used, would be unable to utilize such rights.
We reject Lamar's suggestion and conclude that the better proposition of law is, as stated above, that the right to maintain and use a legal nonconforming use "runs with the land" and is an incident of ownership of the land. Based on this holding, we affirm the district court's initial order granting partial summary judgment in favor of appellees and conclude that when Lamar's leases were terminated, any rights it had with respect to the nonconforming use of the land were extinguished.

Standing Requires a Special Injury: Lamar Lacked Standing to Challenge the Constitutionality of Ordinance No. 4032.
Lamar's second and third assignments of error, condensed and summarized, claim that the district court erred in concluding Lamar lacked standing to assert an "as applied" constitutional challenge to ordinance No. 4032 and that the district court erred in concluding that ordinance No. 4032 was constitutional on its face.
In its order, the district court concluded that once Lamar's leasehold interests were lawfully terminated, it had no ownership interest in the nonconforming use rights. Therefore, Lamar lacked standing to challenge ordinance No. 4032 as it applied to the nonconforming signs on appellee landowners' properties. The district court further concluded that Lamar did have standing to raise a facial challenge to the ordinance, because it owned other nonconforming signs in Fremont.
As explained below, we agree with the district court that once Lamar's leaseholds were terminated, Lamar no longer had a legal interest in the nonconforming use rights and, therefore, could not show that it was in danger of sustaining direct injury as a result of the enactment of ordinance No. 4032 as it applied to the nonconforming signs at issue in this case. Unlike the district court, however, we further conclude that Lamar lacked standing to make a facial challenge to ordinance No. 4032, because Lamar failed to establish that it was in danger of sustaining any direct injury as a result of the enactment of ordinance No. 4032.
We have repeatedly held that in order for a party to establish standing to bring suit, it is necessary to show that the party is in danger of sustaining direct injury as a result of anticipated action, and it is not sufficient that one has merely a general interest common to all members of the public. State ex rel. Steinke v. Lautenbaugh, 263 Neb. 652, 642 N.W.2d 132 (2002). Indeed, as an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to *904 warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. McClellan v. Board of Equal. of Douglas Cty., 275 Neb. 581, 748 N.W.2d 66 (2008). Generally, in order to have standing to bring suit to restrain an act of a municipal body, the persons seeking such action must show some special injury peculiar to themselves aside from a general injury to the public, and it is not sufficient that they have merely a general interest common to all members of the public. Id. Further, in order to maintain an action to enforce private rights, the plaintiff must show that he will be benefited by the relief to be granted. Hall v. Cox Cable of Omaha, Inc., 212 Neb. 887, 327 N.W.2d 595 (1982) (citing Stahmer v. Marsh, 202 Neb. 281, 275 N.W.2d 64 (1979)). Thus, in seeking to challenge ordinance No. 4032, Lamar must show that the enactment of the ordinance resulted in some special injury peculiar to it, and this injury must be separate from a general injury to the public.
In this case, Lamar has not established that it will endure any such special injury. The district court noted that Lamar owns other nonconforming signs in Fremont, but the owning of nonconforming signs alone does not establish that Lamar has or will suffer some sort of special injury as a result of the enactment of ordinance No. 4032. Indeed, neither the district court nor Lamar has indicated how the enactment of ordinance No. 4032 will injure Lamar. While it is conceivable that Lamar may have other signs replaced under the ordinance, the record before us does not indicate any such facts have occurred or are likely to occur. Moreover, it is also conceivable that Lamar could benefit from the ordinance by replacing its competitors' nonconforming signs.
Based on the record before us, we conclude that Lamar lacked standing to assert its "as applied" or facial challenge to ordinance No. 4032, and, although our reasoning differs from that of the district court, we affirm the district court's grant of summary judgment with respect to the constitutional challenge.

Lamar Cannot Establish Its Takings Claims.
Lamar argues that the district court erred in granting summary judgment on its claims of regulatory taking, because genuine issues of material fact existed. Specifically, Lamar argues that there were genuine issues of material fact whether ordinance No. 4032 destroyed the value of Lamar's property to such an extent that it constituted a regulatory taking of Lamar's property rights by eminent domain.
A claim that a regulation "goes too far" and deprives an individual or entity of a vested property right should be analyzed under the Takings Clause of the Fifth Amendment and the Nebraska Constitution. See, Scofield v. State, 276 Neb. 215, 753 N.W.2d 345 (2008); U.S. Const. amend. V.; Neb. Const. art. I, § 21. To establish a takings claim under either the U.S. or Nebraska Constitution, it is axiomatic that the claimant must have been deprived of some property right.
Lamar bases its takings claim on the notion that it had a vested property right in the nonconforming use of its billboard signs. However, earlier in this opinion, we concluded that any rights Lamar had with respect to the nonconforming use were extinguished when its leases were terminated. Therefore, because Lamar had no property rights to take, Lamar's takings claims fail. The district court did not err in concluding that there were no genuine issues of material fact as to Lamar's takings claims.

*905 There Were No Genuine Issues of Material Fact Concerning Whether Lamar's Contract Rights Were Constitutionally Impaired.

Next, Lamar argues that ordinance No. 4032, as enacted, violates U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16, because it is a law that invalidates Lamar's contract rights. We reject this argument.
In Miller v. City of Omaha, 253 Neb. 798, 573 N.W.2d 121 (1998), this court set forth the three-part analysis to determine whether a contract has been unconstitutionally interfered with. Under Miller, we examine (1) whether there has been an impairment of the contract; (2) whether the City's actions, in fact, operated as a substantial impairment of the contractual relationship; and, if so, (3) whether that impairment was nonetheless a permissible, legitimate exercise of the City's sovereign powers. Because Lamar cannot establish the first prong of the Miller analysis, we do not consider the remaining prongs.
As stated earlier in this opinion, once Lamar's leaseholds were terminated, all rights Lamar had in the nonconforming use of its billboards were extinguished. The landowners and Lamar agree that the leases permitting Lamar to place its billboards on their lands were terminated under the terms of the periodic lease agreements. The lease agreements were entered into prior to the enactment of ordinance No. 4032. Therefore, Lamar's contracts were not impaired by the enactment of ordinance No. 4032, because Lamar received all the benefit of the bargained-for contract. The district court properly granted summary judgment in favor of appellees and dismissed this claim.

Lamar Cannot Establish a Claim Under 42 U.S.C. § 1983.
Lamar next claims that based on the enactment of ordinance No. 4032, there were genuine issues of material fact whether the City deprived Lamar of its "`rights, privileges or immunities secured by the Constitution or laws of the United States,'" in violation of 42 U.S.C. § 1983. Brief for appellant at 42. Again, based on our initial conclusion, once Lamar's leaseholds were properly terminated, all rights it had in the nonconforming use of its signs were extinguished. Thus, Lamar had no rights of which to be deprived and this claim is without merit.

There Were No Genuine Issues of Material Fact Whether Victor Tortiously Interfered With Lamar's Contractual Rights.
Next, Lamar claims that the district court erred in granting appellees' motion for summary judgment, because there were genuine issues of material fact whether Victor tortiously interfered with its contractual relationship with appellee landowners. This assignment of error is without merit.
In order to establish a claim for tortious interference with a business relationship or expectancy, a claimant must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. See Aon Consulting v. Midlands Fin. Benefits, 275 Neb. 642, 748 N.W.2d 626 (2008).
One of the basic elements of tortious interference with a business relationship *906 requires an intentional act which induces or causes a breach or termination of the relationship. See id. An intentional, but justified, act of interference will not subject the interferer to liability. See Matheson v. Stork, 239 Neb. 547, 477 N.W.2d 156 (1991) (citing and clarifying Miller Chemical Co., Inc. v. Tams, 211 Neb. 837, 320 N.W.2d 759 (1982)). See, also, Restatement (Second) of Torts § 770 (1979).
In Miller Chemical Co., Inc., this court quoted the Restatement of Torts § 768 (1939) with respect to when competition is a proper or improper interference, stating:
"(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if (a) the relation concerns a matter involved in the competition between the actor and the competitor, and (b) the actor does not employ improper means, and (c) the actor does not intend thereby to create or continue an illegal restraint of competition, and (d) the actor's purpose is at least in part to advance his interest in his competition with the other."
211 Neb. at 842, 320 N.W.2d at 762. The court also noted that "[t]he fact that hatred or desire for revenge was part of the reason is insufficient to make interference improper if the conduct is directed at least in part to advancement of [a party's] own competitive interest and social benefits arising therefrom." Id. at 843, 320 N.W.2d at 763.
The district court rejected Lamar's tortious interference claim and found that Victor was protected in its actions of soliciting business from appellee landowners and replacing Lamar's signs by virtue of the "competitor privilege." The district court noted in its order that "Lamar acknowledges that [Victor is] in the outdoor advertising business competing directly against Lamar in the Fremont market...." The court further noted that by their terms, Lamar's leases were subject to termination.
We agree that Lamar has failed to establish a claim for tortious interference with a business relationship. However, for completeness, we note that although Miller Chemical Co., Inc. used the term "privilege," we have since clarified that an intentional, but justified, act of interference, such as valid competition, cannot be the basis for a tortious interference claim. See Matheson v. Stork, supra.
The undisputed facts in this case are that Victor and Lamar are both in the sign business and that both conduct business in the Fremont area. The record further shows that Lamar's leases were terminated by their terms. Even giving all inferences in favor of Lamar, there is nothing in the record to indicate that Victor employed improper means to replace Lamar's leases, and there is no evidence that Victor will restrain further competition.
Lamar suggests that the enactment of the ordinance and the replacing of its signs were the result of ill will between Lamar and some of the appellees. But as noted in Miller Chemical Co., Inc., supra, even if part of the motivation for replacing Lamar's signs was based on ill will, as a competitor in the sign business, Victor is allowed to make efforts to advance its sign business, including efforts to recruit new customers for its sign business. Victor's actions were not an improper interference. Lamar has failed to establish a claim for tortious interference of a business relationship, and in the absence of a genuine issue of material fact, the district court's ruling in favor of appellees on the motion for summary judgment was not error.

*907 There Were No Genuine Issues of Material Fact as to Lamar's Claim of Civil Conspiracy.

Finally, Lamar argues that genuine issues of material fact existed with respect to Lamar's claim of civil conspiracy. Lamar contends that Victor and appellee landowners conspired against Lamar to deprive it of its nonconforming property rights.
A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means. Eicher v. Mid America Fin. Invest. Corp., 275 Neb. 462, 748 N.W.2d 1 (2008). We have previously stated that a "conspiracy" is not a separate and independent tort in itself, but, rather, is dependent upon the existence of an underlying tort. Brummels v. Tomasek, 273 Neb. 573, 731 N.W.2d 585 (2007). Without such an underlying tort, there can be no claim for relief for a conspiracy to commit the tort. Id.
Again, as we noted earlier in this opinion, once Lamar's leases were properly terminated, any rights it had in the nonconforming use of the signs were extinguished. Furthermore, we affirmed the district court's denial of Lamar's claim for tortious interference with business relationship. Therefore, based on the record in this case, we conclude that Lamar has not established any predicate tort to support its claim of civil conspiracy, and therefore, the district court did not err in granting appellees' motion for summary judgment on this claim.

The District Court Did Not Abuse Its Discretion by Denying Cross-Appellants Attorney Fees.
For their cross-appeal, appellee landowners claim that the district court erred in denying their motion for attorney fees sought under § 25-824. Section 25-824 provides generally that the district court can award reasonable attorney fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense that a court determines is frivolous or made in bad faith. See Stewart v. Bennett, 273 Neb. 17, 727 N.W.2d 424 (2007).
The district court denied appellees' motion for attorney fees, concluding that "the Court cannot say that [Lamar's] lawsuit was without rational argument based on law and evidence to support [Lamar's] position in the lawsuit." The court further noted that Lamar's attorneys were always thoroughly prepared and that it was evident that the attorneys had spent substantial time and effort in researching and investigating the claims.
We will not disturb a district court's rulings on attorney fees absent an abuse of discretion. After reviewing the history of this case, we conclude that the trial court did not abuse its discretion in determining that this case was not frivolous or brought in bad faith. Therefore, the district court's denial of attorney fees is affirmed.

CONCLUSION
The district court properly concluded that when Lamar's leases were terminated by their terms, Lamar's rights with respect to the nonconforming use of the signs were extinguished and remained with the current landowner. Furthermore, Lamar lacked standing to raise its "as applied" and facial challenges to ordinance No. 4032 and the district court was not in error in granting summary judgment in favor of appellees on Lamar's remaining claims. Further, the district court did not err in denying the cross-appellants' request for attorney fees.
AFFIRMED.