**BURKHART ADVERTISING, INC., Appellant–Third Party Plaintiff,**

v.

**CITY OF FORT WAYNE, Appellee–Third Party Defendant.**

No. 02A03–0904–CV–183.

Court of Appeals of Indiana.

Dec. 17, 2009.

Patrick R. Hess, Craig R. Patterson, Fort Wayne, IN, Attorneys for Appellant.

Robert W. Eherenman, Haller & Colvin, P.C., Fort Wayne, IN, Attorney for Appellee.

**OPINION**

BARNES, Judge.

### Case Summary

Burkhart Advertising, Inc., ("Burkhart") appeals the trial court's grant of summary judgment to the City of Fort Wayne ("City") and the trial court's denial of Burkhart's motion for summary judgment. We affirm.

### Issue

Burkhart raises one issue, which we restate as whether the City's approval of a landowner's development plan conditioned on the removal of Burkhart's billboard resulted in a taking under the Fifth Amendment to the United States Constitution.

### Facts

The designated evidence demonstrates that, in October 2000, Connie Kammeyer, executor for the Estate of Martha Lee, entered into an advertising location lease

with Burkhart. Kammeyer leased space on property adjacent to Coldwater Road in Fort Wayne to Burkhart for the placement of a billboard. The term of the lease was ten years beginning on October 15, 2000. Additionally, the lease provided:

If Lessee's sign structures and equipment are relocated on or removed from said premises as a result of any condemnation or eminent domain proceedings, Lessee shall be entitled to receive payment for the loss of its leasehold interest and all costs of removal and relocation of its signs, structures and devices from any corporation or governmental division asserting such right of condemnation or eminent domain.

Lessor may terminate this lease upon commencing construction of a permanent substantial building on said premises requiring removal of Lessee's sign structures and equipment, provided Lessor has given Lessee at least thirty (30) days advance notice in writing and has refunded any prepaid rent hereunder to Lessee. If Lessor doesn't commence the construction of such building within ninety (90) days after giving such notice and complete such building within a reasonable time thereafter, Lessee shall have the right to reinstitute this lease and rebuild or restore its advertising structures, signs and devices on the leased premises and, in which event, Lessor shall reimburse Lessee for all costs expended by Lessee therefor forthwith upon request by Lessee.

Appellee's App. p. 4. Burkhart also had the right to terminate the lease if the billboard became prohibited by any law or "if a change occur[red] in matters beyond the control" of Burkhart that interfered with the advertising value of the billboard. *Id.*

After the billboard was constructed, Providence, LLC, ("Providence") purchased the real estate. On February 16, 2005, Providence applied to the Fort Wayne City Plan Commission for approval of a development plan for an eight-building office park on the property. Providence sought to rezone the property from Low Intensity Residential to Professional Offices and Personal Services ("CM1"). Development of the property required the construction of a deceleration lane and entrance to the office park. According to the design engineer, the "design, placement and construction of the subject deceleration lane and entrance to the proposed office park" required the removal of Burkhart's existing billboard. Appellant's App. p. 152. The engineer noted that substantial grading was required on the entire site and removal of the billboard was "an engineering necessity" due to the increase in elevation of five to six feet. *Id.* Revised development plans submitted to the Plan Commission in March 2005 show the existing billboard in the proposed deceleration lane.

The Plan Commission's staff recommended approval of Providence's proposed development subject to, in part, removal of Burkhart's sign. The staff noted: "Off premise signage is not permitted in a CM1 zoning district. Sign must be removed prior to the start of building construction." *Id.* at 198. The Plan Commission approved Providence's development plan in April 2005. Providence then applied for a secondary development plan approval.

In May 2005, Providence notified Burkhart that it was terminating the billboard lease pursuant to the lease provision regarding construction of a permanent substantial building on the property. In July 2005, noting that Burkhart had failed to remove its billboard, Providence threatened to take legal action against Burkhart. In February 2006, Providence filed a complaint against Burkhart for declaratory judgment, breach of contract, trespass,

and an injunction. Burkhart then filed a third party complaint against the City alleging that: (1) its rights under the Fifth Amendment to the United States Constitution were violated by the City's "attempted exaction of its property rights;" (2) its rights under Article 1, Section 12 and Article 1, Section 21 of the Indiana Constitution were violated; and (3) the City tortiously interfered with its lease with Providence. *Id.* at 112.

During the lawsuit, Providence abandoned its office park development, and in May 2008, at Providence's request, the trial court dismissed the complaint against Burkhart with prejudice. Burkhart's billboard remains in the same location, and the property has not been developed.

In October 2008, Burkhart and the City filed motions for summary judgment. Burkhart argued that the development plan approval conditioned on the removal of the billboard resulting in a taking. According to Burkhart, it was entitled to attorney fees for defending against Providence's complaint and for prosecuting its complaint against the City. The City, on the other hand, argued that a taking did not occur under either the Indiana Constitution or the United States Constitution and that it did not interfere with Burkhart's lease with Providence.[1] After a hearing, the trial court granted the City's motion for summary judgment. The trial court found that this situation was "most closely aligned with" the case of *St. Louis*

*Park Post No. 5632 v. City of St. Louis Park,* 687 N.W.2d 405 (Minn.Ct.App.2004), and concluded that a taking did not occur. The trial court determined that:

> [T]he City of Fort Wayne's zoning ordinance did not affect the rights and responsibilities of the lease as it currently exists. In fact, the billboard currently remains on the property. If Providence or some other subsequent landowner chooses to develop the property, and the current city zoning ordinance requires the removal of the billboard, then Burkhart would have whatever remedies are available to it under the lease and any applicable contract law. It is and was Providence's choice to develop the property before its lease with Burkhart expired. Burkhart has whatever remedies state law provides it, if Providence's decision amounts to a breach of the lease. The city has not changed the terms of the lease, and it does not owe Burkhart compensation.

Appellant's App. pp. 19–20.

## Analysis

The issue on appeal is whether the City's grant of Providence's development plan conditioned on the removal of Burkhart's billboard resulted in a taking under the Fifth Amendment to the United States Constitution.[2] This issue comes to us by way of the trial court's granting of the City's motion for summary judgment and denial of Burkhart's motion for sum-

---

1. The City also argued that Burkhart had failed to exhaust administrative remedies and failed to comply with the Tort Claims Act. The trial court's order notes that "[t]he parties have agreed and stipulated that Burkhart was not required to comply with the Indiana Tort Claims Act." Appellant's App. p. 16. The trial court also found that Burkhart was not required to exhaust administrative remedies. The parties do not raise these issues on appeal.

2. Although Burkhart raised the Indiana Constitution in its complaint and motion for summary judgment, it does not make an argument regarding the Indiana Constitution on appeal. Regardless, our supreme court has held that "the state and federal takings clauses are textually indistinguishable and are to be analyzed identically." *State v. Kimco of Evansville, Inc.,* 902 N.E.2d 206, 210 (Ind. 2009), *cert. filed* (Aug. 6, 2009).

mary judgment. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

■ The Fifth Amendment to the U.S. Constitution provides: "[N]or shall private property be taken for public use, without just compensation." The Fifth Amendment's Takings Clause applies to the states via the Due Process Clause of the Fourteenth Amendment. *State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind.2009), *cert. filed* (Aug. 6, 2009). The classic "taking requiring just compensation is a direct governmental appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537, 125 S.Ct. 2074, 2081, 161 L.Ed.2d 876 (2005).

Clearly, if the City had initiated eminent domain proceedings against Burkhart, Burkhart would be entitled to compensation. *See State v. Bishop*, 800 N.E.2d 918 (Ind.2003) (discussing damages for the value of a billboard taken by eminent domain). However, here, there has been no direct governmental appropriation or physical taking of Burkhart's billboard. Burkhart's claim against the City is, in effect, an inverse condemnation claim.

■ "Inverse condemnation is the process provided by statute that allows individuals to be compensated for the loss of property interests taken for public pur-

poses without use of the eminent domain process." *Tornatta Investments, LLC v. Indiana Dep't of Transp.*, 879 N.E.2d 660, 663 (Ind.Ct.App.2008), *trans. denied.* Indiana Code Section 32–24–1–16 provides that "[a] person having an interest in property that has been or may be required for a public use without the procedures of [the eminent domain] article or any prior law followed is entitled to have the person's damages assessed" under Indiana's statutory eminent domain procedure.

■ There are two stages in an action for inverse condemnation. *Jenkins v. Board of County Comm'rs of Madison County*, 698 N.E.2d 1268, 1270 (Ind.Ct. App.1998), *trans. denied.* The first stage involves the issue of whether a taking of property has occurred. *Id.* At this stage, the landowner must show that he has an interest in land that has been taken for a public use without having been appropriated under eminent domain laws. *Id.* If the trial court finds that a taking has occurred, then the matter proceeds to the second stage where the court appoints appraisers and damages are assessed. *Id.* In this case the matter never proceeded beyond the first stage. The trial court determined there was no taking, and thus, appraisers were not appointed.

■ Burkhart argues that a regulatory taking occurred when the City conditioned approval of the development plan on removal of Burkhart's billboard. "[A]side from acquisition or invasion[,] most government regulation of property does not offend the Takings Clause." *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1221 (Ind.2000), *reh'g granted on other grounds*, 737 N.E.2d 719 (Ind.2000). The United States Supreme Court, however, has identified several ways in which a plaintiff may challenge a government regulation as an uncompensated taking of pri-

vate property.[3] Burkhart focuses on the land-use exactions as discussed in *Nollan v. California Coastal Comm.,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), and *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).[4]

■ Before addressing whether a taking has occurred, however, we must determine whether Burkhart had a compensable interest in the land. Generally, a tenant is entitled to compensation for an unexpired term of a lease terminated by condemnation. *J.J. Newberry Co. v. City of East Chicago,* 441 N.E.2d 39, 41 (Ind.Ct.App. 1982); *see also* Jay M. Zitter, Annotation, *Validity, Construction, and Effect of Statute or Lease Provision Expressly Governing Rights and Compensation of Lessee Upon Condemnation of Leased Property,* 22 A.L.R.5th 327 (1994). However, the parties to the lease may agree to a different allocation of a condemnation award or agree that the lease would terminate in the event of such condemnation.

Our supreme court addressed this issue in *State v. Heslar,* 257 Ind. 307, 274 N.E.2d 261 (1971). There, the State condemned property, which was owned by Heslar and Rice but was being used by a car dealership as its used car lot. At the trial, the dealership stipulated that it had "no leasehold interest" in the premises. *Heslar,* 257 Ind. at 310, 274 N.E.2d at 264. Our supreme court held:

Such a stipulation would seem analogous to a provision in the lease itself stating the rights of the respective parties in case of condemnation. Such provisions have generally been held to be valid. *See* 96 A.L.R.2d 1140–1178, 27 Am. Jur.2d Eminent Domain § 250. It should also be noted that the lease contained a provision which said the owners of the fee had the right to sell the property and should they do so they could cancel the lease upon six months notice to the lessee, [the dealership]. An estate in land which could be cancelled at any time does not seem to be an interest which would have a compensable value in a condemnation suit. This is another indication of [the dealership's] lack of an estate in the land. Thus, it is apparent from the uncontroverted testimony, from the stipulation between the lessor and the lessee, and from the termination provision of the lease that [the dealership] had no estate in the tract of land taken which would allow damages to accrue to them. . . .

*Id.* at 312, 274 N.E.2d at 264. Consequently, the dealership had no compensable interest in the land, in part, because of the lease provision allowing the landlord to terminate the lease with six months notice.

■ Similarly, here, the lease between Providence and Burkhart contained a pro-

---

**3.** A party may allege a regulatory taking by: (1) alleging a "physical" taking; (2) alleging a "total regulatory taking," where a regulation has completely deprived an owner of "all economically beneficial" use of his or her property, as in *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); (3) demonstrating the applicability of factors set out in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); or (4) alleging a land-use exaction as discussed in *Nollan* and *Dolan. Lingle,* 544 U.S. at 538, 546–48, 125 S.Ct. at 2081, 2086–87.

**4.** In *Nollan* and *Dolan,* the Supreme Court examined whether the government could condition the granting of a land-use permit on the conveyance of an easement. The Court held that, in evaluating petitioner's claim, we must first determine whether the "essential nexus" exists between the "legitimate state interest" and the permit condition exacted by the city. *Dolan,* 512 U.S. at 386, 114 S.Ct. at 2317. If we find that a nexus exists, we must then decide the required degree of connection between the exactions and the projected impact of the proposed development. *Id.*

vision that allowed Providence to terminate the lease if it developed the property. The provision stated:

> Lessor may terminate this lease upon commencing construction of a permanent substantial building on said premises requiring removal of Lessee's sign structures and equipment, provided Lessor has given Lessee at least thirty (30) days advance notice in writing and has refunded any prepaid rent hereunder to Lessee. If Lessor doesn't commence the construction of such building within ninety (90) days after giving such notice and complete such building within a reasonable time thereafter, Lessee shall have the right to reinstitute this lease and rebuild or restore its advertising structures, signs and devices on the leased premises and, in which event, Lessor shall reimburse Lessee for all costs expended by Lessee therefor forthwith upon request by Lessee.

Appellee's App. p. 4. This is exactly the situation that occurred here. Providence wanted to develop the property into an office park, and construction of the new office park entrance required removal of Burkhart's billboard, which would have been located in the proposed deceleration lane. Providence gave Burkhart the required thirty-day notice to terminate the lease. Even if the City had not conditioned the development plan on removal of the billboard, Burkhart would have been required to remove the sign pursuant to the lease provisions. When Burkhart failed to remove its sign, Providence filed a complaint against Burkhart for, among other things, breach of the lease and removal of the sign.

 "Courts in Indiana have long recognized the freedom of parties to enter into contracts and have presumed that contracts represent the freely bargained agreement of the parties." *Trimble v.*

*Ameritech Pub., Inc.,* 700 N.E.2d 1128, 1129 (Ind.1998). "[I]t is in the best interest of the public not to restrict unnecessarily persons' freedom of contract." *Id.* (quoting *Fresh Cut, Inc. v. Fazli,* 650 N.E.2d 1126, 1129 (Ind.1995)). Burkhart freely entered into this lease with Providence's predecessor. In fact, the lease is clearly Burkhart's own form lease. We conclude that the termination of a lease according to the parties' own provisions is not a taking of property. Given the termination of the lease pursuant to Providence's proposed development of the property and our supreme court's opinion in *Heslar,* we conclude that Burkhart had no interest in the property compensable by the City. *See also P.C. Management, Inc. v. Page Two, Inc.,* 573 N.E.2d 434, 439 (Ind.Ct.App.1991) (holding that a sublessee had no property interest taken by the City).

 We acknowledge another clause in the lease, which provides:

> If Lessee's sign structures and equipment are relocated on or removed from said premises as a result of any condemnation or eminent domain proceedings, Lessee shall be entitled to receive payment for the loss of its leasehold interest and all costs of removal and relocation of its signs, structures and devices from any corporation or governmental division asserting such right of condemnation or eminent domain.

Appellee's App. p. 4. However, "[i]t is well settled that when interpreting a contract, specific terms control over general terms." *GPI at Danville Crossing, L.P. v. West Cent. Conservancy Dist.,* 867 N.E.2d 645, 651 (Ind.Ct.App.2007), *trans. denied.* The more specific language of the development provision controls over the eminent domain provision in this situation, and the lease terminated, resulting in Burkhart losing any compensable interest in the property.

Finally, Burkhart also argues that it is entitled to compensation based upon Indiana Code Section 22–13–2–1.5, which provides:

A state agency or political subdivision may not require that a lawfully erected sign be removed or altered as a condition of issuing:

(1) a permit;

(2) a license;

(3) a variance; or

(4) any other order concerning land use or development;

unless the owner of the sign is compensated in accordance with IC 32–24 or has waived the right to and receipt of damages in writing.

However, this statute was not enacted until 2006, and the effective date of the statute was effective March 24, 2006. The City approved Providence's development plan conditioned on the removal of Burkhart's sign in 2005, months before this statute was enacted. Consequently, this statute is not applicable to this dispute.

Our decision is in congruence with the decisions of other courts considering similar issues. The trial court relied on *St. Louis Park Post No. 5632 v. City of St. Louis Park,* 687 N.W.2d 405 (Minn.Ct. App.2004), which we also find persuasive. There, Clear Channel and a VFW Post entered into a five-year lease agreement for the placement of a billboard on top of the VFW Post's building. The lease provided:

At any time during the Term of this Lease, the Lessor will have the right to terminate this Lease early for the Sale and/or Re-development of the Property requiring the removal of the Lessee's Advertising Sign from site, by providing the Lessee with a Seventy Five (75) day written notice of Early Termination to the office of the Lessee as provided for in Paragraph 11 above, along with a check for reimbursement, on a pro rata basis, for Rent pre-paid for the un-expired term resulting from the Lessor's Early Termination of this Lease.

*St. Louis Park Post No. 5632,* 687 N.W.2d at 406 n. 1.

The VFW Post then sold the property, and a proposed lessee of the property filed an application for a conditional use permit. The city granted the conditional use permit but required a number of zoning nonconformities to be remedied. In particular, the city required removal of the billboard. The property owner then attempted to terminate the lease pursuant to the above provision. Clear Channel filed a declaratory judgment action against the city. The trial court granted the city's motion for summary judgment.

On appeal, the Minnesota Court of Appeals addressed whether a taking had occurred. The court noted that Clear Channel's property interest was its billboard lease, and "[t]o determine whether the city ha[d] deprived Clear Channel of its property interest such that compensation [was] owed," the court considered whether the city had altered the terms of the lease. *Id.* at 408. The court concluded:

But the city's action has not altered the lease. If the landowner chooses to forgo property development, the billboard may remain under the terms of the lease for so long as the landowner wishes. If the landowner chooses to develop the property before the lease expires, Clear Channel may leverage whatever remedies state law provides if the landowner's decision amounts to a breach of the billboard lease. As such, the city has not changed the terms of the billboard lease and it does not owe Clear Channel compensation....

*Id.* Similarly, here, the City did not alter the terms of Burkhart's lease with Provi-

dence, and the City does not owe Burkhart compensation.

Burkhart attempts to distinguish *St. Louis Park Post No. 5632* by arguing that the removal of the billboard was required by the ordinance in *St. Louis Park Post No. 5632*, while the removal of Burkhart's billboard was not required by ordinance. Burkhart asserts that "without an applicable ordinance, the City could have approved Providence's primary development plan without requiring the removal of Burkhart's sign." Appellant's Br. p. 11. We find Burkhart's argument unpersuasive. First, the court in *St. Louis Park Post No. 5632* focused on the terms of the billboard lease, not the ordinance. Moreover, it is unclear how the City could have approved Providence's development plan without requiring removal of Burkhart's billboard where the billboard would have been in the middle of the new deceleration lane at the office park's entrance.[5] *See also Lamar Co., LLC v. City of Fremont,* 278 Neb. 485, 771 N.W.2d 894 (2009) (holding that the billboard owner's rights were extinguished when its leases were terminated and its takings claim failed); *Lamar Advantage G.P. Co., LLC v. Addison Park Dist.,* 354 Ill.App.3d 130, 289 Ill.Dec. 850, 820 N.E.2d 626 (2004) (holding that the termination of a billboard lease according to its terms was not a taking of property by eminent domain).

### Conclusion

Burkhart has, in effect, attempted to convert a breach of contract claim against its landlord into a takings claim against the City, and this attempt must fail. We conclude that the trial court properly granted the City's motion for summary judgment and properly denied Burkhart's motion for summary judgment. We affirm.

Affirmed.

MATHIAS, J., and BROWN, J., concur.

---

5. Because we conclude that Burkhart did not have an interest in the property compensable by the City, we need not address Burkhart's arguments regarding *Nollan* and *Dolan*, Burkhart's arguments regarding its entitlement to attorney fees, or the City's arguments regarding the real party in interest.