IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

SECURITY STATE BANK V. BOPP

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SECURITY STATE BANK, ANSLEY, NEBRASKA, A NEBRASKA BANKING CORPORATION, APPELLEE,
v.
TIM BOPP AND YVONNE BOPP, APPELLANTS, AND 4-JEN, INC., APPELLEE.

Filed May 14, 2013.    No. A-12-648.

Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Reversed and remanded.

Tim Bopp, pro se, and Yvonne Bopp, pro se.

Christopher P. Wickham, of Sennett, Duncan & Jenkins, P.C., L.L.O., for appellee Security State Bank, Ansley, Nebraska.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

INTRODUCTION

Security State Bank (Bank), Ansley, Nebraska, brought a replevin action against Tim Bopp, Yvonne Bopp, and 4-Jen, Inc., for the delivery of personal property covered under security agreements. The security agreements were connected with promissory notes executed by the Bopps and 4-Jen in favor of the Bank, on which the Bopps and 4-Jen defaulted. The district court for Custer County granted summary judgment in favor of the Bank and entered judgment against the Bopps and 4-Jen. The Bopps appeal. Because we find that the Bopps presented sufficient evidence to create a genuine issue of material fact, we reverse the judgment and remand the matter as to the Bopps only. The district court's ruling as to 4-Jen was not appealed, and therefore, it is not before us and we need not address it further.

BACKGROUND

From 2008 to 2010, the Bopps and 4-Jen executed promissory notes in favor of the Bank. Tim Bopp is the registered agent of 4-Jen, which is a Nebraska corporation with its principal place of business in Westerville, Custer County, Nebraska. The promissory notes were secured by security agreements granting the Bank a security interest in personal property covered under the security agreements. The Bopps and 4-Jen failed to pay the promissory notes when they were due, and the promissory notes were in default.

On August 22, 2011, the Bank filed a petition in replevin seeking a judgment against the Bopps and 4-Jen for the return of personal property covered under the security agreements.

On May 30, 2012, the Bank filed a motion for summary judgment. On June 12, the Bopps filed a "Dispute of Alleged Debt," which stated that they were disputing the debt alleged to be owed to the Bank because the parties had negotiated and agreed to a settlement of the Bopps' complete debt which involved the Bopps' transferring a parcel of land to the Bank by quitclaim deed in October 2011.

On July 5, 2012, the trial court held a hearing on the Bank's motion for summary judgment. The Bank offered into evidence an affidavit of Brad Parliament, the vice president of the Bank, which affidavit set forth information regarding the promissory notes executed by the Bopps and 4-Jen and the security agreements that secured those promissory notes. The affidavit also stated that the Bank had perfected its security interest in the personal property covered under the security agreements by filing certain documents with the Nebraska Secretary of State. The affidavit stated that the Bopps and 4-Jen had failed to pay the promissory notes when due and they were in default and that by virtue of the terms of the security agreements, the Bank was entitled to bring a replevin action, as it did, in order to repossess the personal property pledged as collateral for the promissory notes. The affidavit stated that the total debt owed by the Bopps and 4-Jen as of June 8, 2012, including interest and late charges, was $288,811.01. The promissory notes and security agreements were attached to the affidavit and entered into evidence along with the affidavit.

The Bopps, representing themselves, offered two exhibits into evidence. The first was a "Response to Affidavit of . . . Parliament," in which the Bopps alleged the parties had agreed that the quitclaim deed executed in October 2011 released the Bopps from all debt owed to the Bank. The second exhibit was a motion for summary judgment previously filed by the Bopps and 4-Jen, with attachments that included affidavits of both Tim Bopp and Yvonne Bopp and a copy of the quitclaim deed.

Following the hearing, the district court sustained the Bank's motion for summary judgment and judgment was entered against the Bopps and 4-Jen for the delivery of personal property prayed for in the Bank's petition in replevin.

ASSIGNMENTS OF ERROR

The Bopps assign that the trial court erred in (1) failing to find that the clear language of the quitclaim deed indicated that any debt owed to the Bank by the Bopps was relieved and (2) failing to find that the Bank breached a lawful contract.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact, or as to the ultimate inferences that may be drawn from those facts, and that the moving party is entitled to judgment as a matter of law. See *Lamar Co. v. City of Fremont*, 278 Neb. 485, 771 N.W.2d 894 (2009). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

The Bopps argue that the trial court erred in failing to find that the language of the quitclaim deed made it clear that in signing the deed, the Bopps were relieved of all debt owed to the Bank. They also argue that because all indebtedness to the Bank was satisfied by the quitclaim deed and no longer owed, the Bank breached a lawful contract, the quitclaim deed, when it filed the replevin action. Essentially, the Bopps contend that the trial court erred in granting summary judgment in favor of the Bank because the quitclaim deed creates a genuine issue of material fact as to whether the deed was intended to completely satisfy the Bopps' indebtedness to the Bank and, thus, whether the Bank can enforce its security interest.

Before addressing the Bopps' argument that the quitclaim deed creates a genuine issue of material fact, we must address an argument made by the Bank. The Bank argues that the Bopps' contention that all of their indebtedness to the Bank has been satisfied is an affirmative defense that had to be raised in the pleadings, and was not. The Bank claims that the Bopps filed a general denial in response to its petition in replevin and did not raise any affirmative defenses. The Bank contends that the Bopps did not assert satisfaction of indebtedness as a defense until they filed the "Dispute of Alleged Debt," in response to the Bank's motion for summary judgment. The Bank argues that by failing to raise satisfaction of the indebtedness as an affirmative defense in the pleadings, the Bopps have waived such defense.

We disagree with the Bank's contention that the Bopps failed to raise satisfaction of the indebtedness as an affirmative defense. We recognize that an affirmative defense must be specifically pled to be considered and that accord and satisfaction, which is apparently what the Bopps are asserting, is an affirmative defense. See, *Countryside Co-op v. Harry A. Koch Co.*, 280 Neb. 795, 790 N.W.2d 873 (2010); *Cass Constr. Co. v. Brennan*, 222 Neb. 69, 382 N.W.2d 313 (1986). In the record before us, there is no answer of any kind filed by the Bopps. However, the "Dispute of Alleged Debt" filed by the Bopps is equivalent to a responsive pleading that raised an affirmative defense. Although the "Dispute of Alleged Debt" was not filed until after the Bank filed its motion for summary judgment, the Bank did not move to strike the document. Accordingly, we determine that the Bopps did not waive satisfaction of the debt as an affirmative defense.

Having determined that the Bopps did not waive satisfaction of the debt as an affirmative defense, we now consider the Bopps' argument that the trial court erred in granting summary judgment in favor of the Bank because they presented evidence to create a genuine issue of material fact as to whether the Bopps' indebtedness has been completely satisfied.

- 3 -

At the summary judgment hearing, the Bank presented evidence, via Parliament's affidavit, to show that the Bopps executed multiple promissory notes in favor of the Bank and that those promissory notes were secured by security agreements pledging certain personal property of the Bopps as collateral. The Bank's evidence showed that the Bopps had defaulted on the promissory notes, and as of June 8, 2012, the Bopps owed the Bank $288,811.01. Because the Bopps defaulted, under the terms of the security agreements, the Bank was entitled to recover the personal property covered under the agreements. The Bank presented enough evidence to show that it was entitled to judgment as a matter of law.

After a movant for summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Cook v. Hall*, 18 Neb. App. 168, 778 N.W.2d 744 (2009).

In attempting to meet its burden, the Bopps presented affidavits from each of them individually, as well as the quitclaim deed. The affidavits both state that the Bopps obtained certain loans from the Bank, totaling $302,929.93 as of September 2011; that the parties negotiated and agreed to a settlement of the Bopps' debt which involved a parcel of land being transferred from the Bopps to the Bank; that the Bank prepared a quitclaim deed for the transfer of the land; and that the language of the quitclaim deed relieved the Bopps of "all indebtedness owed" to the Bank.

The quitclaim deed itself states:

[The Bopps], *in consideration of relief of debt owed to bank*, to them duly paid, the receipt whereof is hereby acknowledged, remised, released, and quit-claimed, and by these presents do remise, release and forever quit-claim unto the [Bank], and to their heirs and assigns forever, their right, title and interest, in and to all: [the described property].

(Emphasis supplied.)

We conclude that between the Bopps' affidavits and the deed, the Bopps presented sufficient evidence to show that a genuine issue of material fact exists. The affidavits of both of the Bopps state that it was the Bank which drafted the language of the quitclaim deed and that the Bopps' understanding in executing the deed was that it relieved them of all debt owed to the Bank.

The wording in the deed, as noted above, says "in consideration of relief of debt owed to bank." Such language is certainly vague enough that it could be understood as "relief of all existing debt," thereby creating an issue of material fact as to whether the quitclaim deed satisfied all of the debt the Bopps owed to the Bank. Given that we must view the evidence in the light most favorable to the Bopps and give them the benefit of all reasonable inferences deducible from the evidence, see *Lamar Co. v. City of Fremont*, 278 Neb. 485, 771 N.W.2d 894 (2009), we conclude that the Bopps met their burden to show that a genuine issue of material fact exists, preventing judgment as a matter of law in favor of the Bank. Accordingly, the trial court erred in granting the Bank summary judgment in regard to the Bopps.

The Bopps make another argument in their brief in regard to an emergency ex parte petition for supersedeas bond that they filed after the summary judgment motion was granted. However, the Bopps have failed to assign any error related to this argument. An alleged error

must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Nordhues v. Maulsby*, 19 Neb. App. 620, 815 N.W.2d 175 (2012). Accordingly, we do not address this argument.

## CONCLUSION

We conclude that the evidence presented by the Bopps created a genuine issue of material fact as to whether the Bopps' total indebtedness to the Bank had been satisfied and, thus, whether the Bank should be able to enforce its interest in  personal property covered under security agreements. Accordingly, the judgment of the trial court granting summary judgment in favor of the Bank is reversed as to the Bopps only, and we remand the matter to the trial court for further proceedings. The defendant, 4-Jen, is not before this court, as we indicated earlier in this opinion. Therefore, the judgment against 4-Jen is unaffected by this decision.

REVERSED AND REMANDED.