Paul F. McGill, appellee and cross-appellee, v.
Lion Place Condominium Association, an
unincorporated association, appellee
and cross-appellant, and Michael
L. Henery, appellant.

___ N.W.2d ___

Filed June 12, 2015.    No. S-14-582.

1. **Res Judicata: Collateral Estoppel.** The applicability of claim and issue preclusion is a question of law.
2. **Statutes.** Statutory interpretation is a question of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
4. **Equity: Appeal and Error.** In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
5. **Actions: Pleadings: Parties.** The character in which one is a party to a suit, and the capacity in which a party sues, is determined from the allegations of the pleadings and not from the caption alone.
6. **Courts: Actions: Parties: Complaints: Pleadings: Records.** If the capacity in which a party sues is doubtful, a court may examine the complaint, the pleadings as a whole, and even the entire record.
7. **Derivative Actions: Words and Phrases.** A derivative action is a suit brought by a shareholder to enforce a cause of action belonging to the corporation.
8. **Derivative Actions: Pleadings.** In appropriate circumstances, a unit owner may bring a derivative suit on behalf of an unincorporated condominium association to enforce a cause of action belonging to the

association. But the unit owner must allege that demand has been made upon the association or governing body to enforce the claim or that demand would have been futile.

9. **Actions: Corporations.** According to the business judgment rule, courts are precluded from conducting an inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes.

10. ____: ____. The business judgment rule applies to all discretionary decisions by a board of directors, including the decision not to pursue a cause of action.

11. **Res Judicata.** Claim preclusion bars the relitigation of a claim that has been directly addressed or necessarily included in a former adjudication.

12. **Collateral Estoppel.** Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate.

13. **Res Judicata: Collateral Estoppel.** While claim preclusion and issue preclusion are similar and serve similar purposes, they are distinct. Among other differences, claim preclusion looks to the entire cause of action, but issue preclusion looks to a single issue.

14. **Res Judicata: Actions.** The basis of the doctrine of res judicata is that the party to be affected, or someone with whom he or she is in privity, has litigated or has had an opportunity to litigate the same matter in a former action.

15. **Collateral Estoppel.** Issue preclusion protects litigants from relitigating an identical issue with a party or his or her privy and promotes judicial economy by preventing needless litigation.

16. ____. The doctrine of issue preclusion recognizes that limits on litigation are desirable, but a person should not be denied a day in court unfairly.

17. **Limitations of Actions: Waiver.** The benefit of a statute of limitations is personal and, like any other personal privilege, may be waived and will be unless pleaded.

18. **Estoppel: Words and Phrases.** Equitable estoppel is a bar which precludes a party from denying or asserting anything to the contrary of those matters established as the truth by his or her own deeds, acts, or representations.

19. **Attorney Fees.** Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

20. **Attorney Fees: Appeal and Error.** When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion.

21. **Attorney Fees: Costs.** Without indication to the contrary, where a statute speaks only to attorney fees and costs, a party may recover his or her attorney fees, the costs of the filing of the action, and any other expenses that are specifically delineated as taxable costs by statute.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed in part, and in part vacated and remanded for further proceedings.

Dean F. Suing and David A. Castello, of Katskee, Henatsch & Suing, for appellant.

Justin D. Eichmann, of Bradford & Coenen, L.L.C., for appellee Paul F. McGill.

Michael S. Kennedy, of Kennedy Law Firm, P.C., L.L.O., for appellee Lion Place Condominium Association.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## I. INTRODUCTION

This appeal was taken from a judgment invalidating the sale of limited common elements of a condominium governed by the Nebraska Condominium Act[1] and awarding attorney fees, expenses, and court costs. We address two primary issues. First, we conclude that despite the absence of statutory authority, equity allows a derivative suit on behalf of an unincorporated unit owners association. Second, we interpret the governing statute[2] to require both approval by 80 percent of the votes in the association and unanimous agreement by the owners of units to which the limited common elements are allocated. But only an award of attorney fees and costs is authorized by the relevant statute.[3] It does not permit the

---

[1] Neb. Rev. Stat. §§ 76-825 to 76-894 (Reissue 2009 & Cum. Supp. 2014).

[2] § 76-870.

[3] § 76-891.01.

recovery of expenses. We vacate the award of costs and expenses and remand the cause for determination of the taxable costs. Because we find no merit to the other issues raised in the appeal, we otherwise affirm the judgment of the district court.

## II. BACKGROUND

### 1. DEVELOPMENT OF CONDOMINIUM

Paul F. McGill developed Lion Place Condominium with Michael L. Henery. The recorded "Declaration of Condominium Property Regime" established 16 units, consisting of 12 residential and 4 commercial units. Henery purchased the commercial units, and McGill purchased four of the residential units.

The declaration allocated certain common elements as limited common elements for the exclusive use of the commercial units. These limited common elements consisted of "[a]ll [c]ommon [e]lements in the basement level and first floor." Under Nebraska law, "[c]ommon elements" include "all portions of a condominium other than the units."[4] A "[l]imited common element" is any "portion of the common elements allocated . . . for the exclusive use of one or more but fewer than all of the units."[5]

To govern the condominium, the declaration established an unincorporated association, composed of all of the unit owners. Each unit owner was granted one vote for each unit owned, except that the owner of the basement commercial unit was granted three votes. Although the association was granted "all of the powers necessary to govern" the condominium, an "[e]xecutive [b]oard" of five unit owners was created to act on the association's behalf and to administer its affairs.

---

[4] § 76-827(4).

[5] § 76-827(16).

## 2. Henery's Purchase of Limited
### Common Elements

In 2008, Henery offered to pay $35,000 to purchase the limited common elements adjacent to his commercial units. The minutes of a July 2008 meeting of the association reveal that Henery's offer may have been the "key" to financing repairs to the exterior of the condominium building. At a meeting in September, the association agreed to withhold approval of Henery's offer until its next meeting in order to facilitate other offers. However, "[e]very [one]" agreed to sell the limited common elements and to accept the highest offer.

McGill also sought to purchase the limited common elements and offered $36,000. Upon learning of McGill's offer, Henery immediately countered with an offer of $36,000, plus the payment of all closing costs and related expenses. At a meeting in December 2008, the association ultimately voted to accept Henery's second offer. As we explain below, the heart of the controversy is the sufficiency of the vote at the December 2008 meeting.

In May 2009, Henery and the president of the association signed a purchase agreement for a portion of the limited common elements adjacent to Henery's commercial units. And in order to transfer the limited common elements to Henery, the president signed an amendment to the condominium declaration, modifying the boundaries of three of Henery's commercial units to incorporate the limited common elements. The president then reconveyed the modified commercial units to Henery via a warranty deed.

### 3. McGill's First Action

In January 2010, McGill filed an action in the district court for Douglas County against Henery and the association, challenging the sale of the limited common elements. The 2010 action was dismissed upon the association's motion for judgment on the pleadings. The district court determined that McGill lacked standing as an individual to bring the action. It observed that McGill had failed to demonstrate how he was

injured by the sale to Henery, because the limited common elements had always been allocated to Henery's commercial units. And the court further denied McGill leave to amend his complaint, observing that a lack of standing could not be remedied by amendment.

### 4. PRESENT ACTION

#### (a) Pleadings and Pretrial Proceedings

After the dismissal of the 2010 action, McGill filed a second action against Henery and the association in the district court for Douglas County. And McGill again challenged the sale of the limited common elements. However, in contrast to the 2010 action, McGill brought the second action "on his own behalf, as well as on behalf of all other members of the [a]ssociation similarly situated, derivatively in the right of and for the benefit of the [a]ssociation." And he asserted that he had made demand upon the association to initiate proceedings regarding the sale, but that the executive board had refused.

Both Henery and the association moved to dismiss on the basis that the second action was barred by the dismissal of the 2010 action. The district court overruled the motions, observing that the 2010 action was dismissed due to McGill's lack of standing as an individual. But the second action was brought derivatively on behalf of the association. Thus, the court determined that while any suit in McGill's individual capacity was barred, a derivative action was appropriate.

Each party subsequently moved for summary judgment. At the summary judgment hearing, the district court received McGill's deposition testimony. In his deposition, McGill indicated that prior to the sale, Henery had been using the limited common elements adjacent to Henery's commercial units. McGill believed that Henery should be paying rent, and McGill complained of Henery's use of the limited common elements to the president of the association. In an affidavit, Henery explained that he sought to incorporate the limited common

elements into his commercial units in order to "avoid any confusion or conflict."

McGill further explained that he had been interested in purchasing the limited common elements and that the sale to Henery "was not done right." McGill had made an offer and included everything that Henery had proposed. But McGill believed that the limited common elements were going to be auctioned, and his offer was only his "beginning bid." McGill also believed that Henery should have paid market value, because the limited common elements had been appraised for $88,000.

The district court overruled each of the motions for summary judgment. Henery subsequently filed a second motion for summary judgment, claiming that McGill could not maintain a derivative action on behalf of the association, because it was unincorporated. The district court rejected Henery's argument and overruled the motion. The court observed that while a derivative action is generally associated with a corporation, "there is nothing that prevents it from being brought on behalf of a partnership, a limited liability company, or some type of other unincorporated association."

(b) Trial

The matter proceeded to trial, and the district court received evidence regarding the December 2008 approval of the sale to Henery. According to the treasurer of the association, all of the unit owners voted in favor of Henery's offer except McGill and another unit owner. However, the treasurer could not remember if an absent unit owner had been represented by a proxy. Thus, the treasurer testified that out of a possible 18 votes, 13 or 14 votes were cast in favor of the sale.

Henery also testified and clarified the circumstances of the vote. According to Henery, the absent unit owner had been represented by a proxy. Henery testified that there were "14 votes voted for the sale and four votes against."

## 5. District Court's Judgment

After trial, the district court entered an order finding that the sale and conveyance were void. The court determined that under the Nebraska Condominium Act, the sale required the approval of 80 percent of the association. But at most, only 77.7 percent of the association approved the sale. Further, the act required an agreement signed by the requisite number of unit owners. But no evidence of such an agreement had been offered by Henery or the association. Consequently, the court concluded that the sale was void and that title to the limited common elements remained with the association. And in a later order, the court awarded McGill his attorney fees in the amount of $28,016 and expenses of $1,209.14, plus costs.

Henery and the association filed several motions to alter or amend or for a new trial, which were all overruled. Henery filed a timely notice of appeal, and the case was initially assigned to the Nebraska Court of Appeals' docket. We moved the case to our docket.[6] After obtaining permission to file a brief out of time, the association filed a brief on cross-appeal.

## III. ASSIGNMENTS OF ERROR

Henery assigns, consolidated and restated, that the district court erred in (1) finding that the derivative action was not barred by the dismissal of the 2010 action, (2) permitting McGill to bring a "shareholder derivative suit" on behalf of the association, (3) determining that McGill was not equitably estopped from bringing the derivative action, and (4) finding that the sale and conveyance of the limited common elements were void.

In its cross-appeal, the association makes the same assignments of error as Henery. But in addition, it contends that the district court erred in (1) finding that McGill had stated a claim, (2) determining that title to the limited common elements remained with the association, and (3) awarding McGill his attorney fees and costs.

---

[6] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## IV. STANDARD OF REVIEW

[1-3] The applicability of claim and issue preclusion is a question of law.[7] Statutory interpretation is a question of law.[8] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[9]

[4] In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[10]

## V. ANALYSIS

Before addressing Henery's and the association's assignments of error, we recall general principles of the condominium form of property ownership. Although Nebraska retains another group of statutes governing condominiums,[11] the Nebraska Condominium Act applies to condominiums created on or after January 1, 1984.[12] Because the declaration in this case was recorded in 1998, the Nebraska Condominium Act controls.

The condominium form is distinguished by its dual levels of property ownership. Individual units are separately owned, while the remainder is designated for common ownership by the unit owners.[13] This remainder comprises the "[c]ommon

---

[7] *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014).

[8] *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013).

[9] *Id.*

[10] *Sadler v. Jorad, Inc.*, 268 Neb. 60, 680 N.W.2d 165 (2004).

[11] See Condominium Property Act, Neb. Rev. Stat. §§ 76-801 to 76-823 (Reissue 2009).

[12] See, § 76-826(a); *Twin Towers Condo. Assn. v. Bel Fury Invest. Group*, 290 Neb. 329, 860 N.W.2d 147 (2015).

[13] See § 76-827(7).

elements" of the condominium.[14] And each unit owner possesses an undivided ownership interest in the common elements. "Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners."[15]

However, the use of some common elements may be reserved to fewer than all of the unit owners. These restricted common elements are known as limited common elements.[16] But limited common elements remain common elements of the condominium. The comments to the Uniform Condominium Act, on which the Nebraska Condominium Act is based,[17] are instructive on this point. "Like all other common elements, limited common elements are owned in common by all unit owners."[18]

Although each unit owner possesses an undivided ownership interest in the common elements, the individual unit owners have no right of control over the common elements. The power to "[r]egulate the use, maintenance, repair, replacement, and modification of common elements" is vested in the association[19] and may be delegated to the executive board.[20]

Having reviewed some basic characteristics of condominium property ownership, we now turn to Henery's and the association's assignments of error. We first address their claims regarding McGill's ability to bring the present action challenging the sale to Henery. We then turn to the validity of the sale and McGill's award of attorney fees, expenses, and costs.

---

[14] See § 76-827(4).

[15] § 76-827(7).

[16] See § 76-827(16).

[17] See 1983 Neb. Laws, L.B. 433.

[18] Unif. Condominium Act § 2-108, comment 1, 7 (part II) U.L.A. 548 (2009).

[19] § 76-860(6).

[20] See § 76-861.

### 1. Present Action

#### (a) Derivative Suit

Henery and the association contend that McGill did not properly sue in a derivative capacity and that Nebraska law did not permit McGill to bring a derivative suit on behalf of the association. They argue that McGill failed to appropriately caption his complaint as being brought in a representative capacity. And they assert that he had no statutory authority to bring the action, because the association was unincorporated. They further invoke the business judgment rule, claiming that the executive board's refusal to instigate proceedings regarding the sale was a reasonable decision. We address each argument in turn.

[5,6] Although McGill's complaint was not captioned as being brought in a representative capacity, we have stated that the character in which one is a party to a suit, and the capacity in which a party sues, is determined from the allegations of the pleadings and not from the caption alone.[21] If the capacity in which a party sues is doubtful, a court may examine the complaint, the pleadings as a whole, and even the entire record.[22]

We read McGill's complaint as asserting a claim on behalf of the association. The complaint specifically stated that the action was brought "derivatively in the right of and for the benefit of the [a]ssociation." And McGill alleged a common injury to the unit owners of the condominium. Each unit owner possessed an undivided ownership interest in the common elements, and McGill claimed that Henery had unlawfully obtained title to certain common elements. Because the association was granted the power to institute litigation on matters affecting the condominium,[23] McGill's allegations

---

[21] See *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015).

[22] *Id.*

[23] See § 76-860(4).

were sufficient to establish that he was asserting a claim on the association's behalf.

[7] We agree that the action did not fall within an express grant of statutory authority. Derivative proceedings are typically initiated pursuant to Nebraska's Business Corporation Act.[24] That act authorizes derivative proceedings brought on behalf of a corporation in certain circumstances,[25] and it applies to a "corporation for profit . . . incorporated under or subject to the provisions of the act."[26] Our case law reflects this paradigm by speaking in terms of "shareholder" and "corporation." We have held that a derivative action is a suit brought by a shareholder to enforce a cause of action belonging to the corporation.[27] However, because the association was unincorporated, the Business Corporation Act did not apply. And the Nebraska Condominium Act is silent as to the right of a unit owner to sue derivatively on behalf of an association.

But derivative proceedings are not dependent upon legislative authorization. Many courts have recognized that derivative actions originated in equity, existing independent of specific legislation.[28] As expressed by the Supreme Court of Delaware,

> [t]o prevent a "failure of justice," courts of equity granted equitable standing to stockholders to sue on behalf of the corporation "for managerial abuse in economic units which by their nature deprived some participants of an effective voice in their administration." The courts

---

[24] Neb. Rev. Stat. §§ 21-2001 to 21-20,197 (Reissue 2012).

[25] See §§ 21-2070 to 21-2077.

[26] § 21-2014(4).

[27] See, e.g., *Kubik v. Kubik*, 268 Neb. 337, 683 N.W.2d 330 (2004); *Sadler, supra* note 10.

[28] See, *Schoon v. Smith*, 953 A.2d 196 (Del. 2008); *Larsen v. Island Developers, Ltd.*, 769 So. 2d 1071 (Fla. App. 2000); *Kilburn v. Young*, 244 Ga. App. 743, 536 S.E.2d 769 (2000); *Caprer v. Nussbaum*, 36 A.D.3d 176, 825 N.Y.S.2d 55 (2006); *Polikoff v. Adam*, 67 Ohio St. 3d 100, 616 N.E.2d 213 (1993).

reasoned that without equitable standing, "stockholders would be without an immediate and certain remedy," there would have been a complete failure of justice, and the general principles of equity and fairness would have been defeated.[29]

Recognizing the equitable origins of derivative actions, in *Caprer v. Nussbaum*,[30] the New York Supreme Court, Appellate Division, extended the ability to sue derivatively to the unit owners of a condominium. The New York court acknowledged that the unit owners had no statutory authority to bring a derivative claim on behalf of the condominium. But the court observed that the basis for the corporate derivative action was the fiduciary relationship between shareholders and directors. And it reasoned that the condominium was analogous to other situations in which derivative suits had been permitted.

> Like the management of a corporation or the general partner in a limited partnership, the members of the board of managers of a condominium owe a fiduciary duty to the individual unit owners in their management of the common property . . . . The same factors that caused the courts to fashion the derivative action procedure for shareholders and limited partners thus apply to condominium unit owners. All are owners of fractional interests in a common entity run by managers who owe them a fiduciary duty that requires protection.[31]

(Citations omitted.)

We agree with the New York court that the same factors prompting the development of derivative actions in other contexts apply equally to condominiums. All of the unit owners possess an interest in the condominium. But the power to initiate proceedings on matters affecting the condominium is granted to the association and may be delegated to a separate

---

[29] *Schoon, supra* note 28, 953 A.2d at 201.

[30] *Caprer, supra* note 28.

[31] *Id.* at 189, 825 N.Y.S.2d at 67.

body.[32] Thus, if derivative proceedings were not allowed, a harm or injury to the condominium might go unaddressed through managerial abuse of power.

Further, we have previously recognized that in certain circumstances, a member of an unincorporated association may properly bring a derivative suit on the association's behalf.[33] Although our previous case arose under considerably different circumstances, it does not suggest any reason why the same rule should not apply to an unincorporated condominium association.

[8] We therefore hold that in appropriate circumstances, a unit owner may bring a derivative suit on behalf of an unincorporated condominium association to enforce a cause of action belonging to the association. But the unit owner must allege that demand has been made upon the association or governing body to enforce the claim or that demand would have been futile.[34]

In the present action, McGill sought to invalidate the alleged unlawful sale of the limited common elements to Henery. And because the sale affected the entire condominium, the cause of action would have been properly initiated by the association or the executive board.[35] But McGill alleged that he had made demand upon the association to initiate proceedings and that the executive board had refused. Additionally, evidence of the demand and refusal was received by the district court. Consequently, we find no error in the district court's conclusion that a derivative proceeding was appropriate.

But Henery and the association also rely upon the executive board's refusal of McGill's demand and contend that the business judgment rule precluded McGill from maintaining a

---

[32] See §§ 76-860(4) and 76-861.

[33] See *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990).

[34] See *id.* See, also, *Sadler, supra* note 10.

[35] See §§ 76-860(4) and 76-861.

derivative suit. They claim that because the executive board's refusal was reasonable and made in good faith, the district court was barred from questioning the sale's validity.

[9,10] This argument is not well taken. According to the business judgment rule, courts are precluded from conducting an inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes.[36] The business judgment rule applies to all discretionary decisions by a board of directors, including the decision not to pursue a cause of action.[37] However, such a decision is entitled to the protection of the business judgment rule only if made by a majority of disinterested directors.[38] In this case, the district court received evidence of two votes of the executive board refusing McGill's demand. But in each vote, Henery and his son formed a part of the majority. And they clearly were not disinterested members of the executive board.[39] We cannot indulge in speculation as to how the other members of the executive board would have voted in the absence of Henery and his son's participation. Consequently, we see no basis for the business judgment rule. This assignment of error is without merit.

### (b) Claim Preclusion and Issue Preclusion

Both Henery and the association contend that the present action was barred by the dismissal of the 2010 action. They assert that the present action was an impermissible attempt to relitigate issues either that were conclusively determined or that could have been raised in the 2010 action.

---

[36] *Sadler, supra* note 10.

[37] See *Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1979).

[38] See *Harhen v. Brown*, 431 Mass. 838, 730 N.E.2d 859 (2000).

[39] See 1 American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 1.23 at 25 (1994) (defining "[i]nterested" director or officer).

As previously discussed, the district court determined that any action brought by McGill in his individual capacity was barred by the dismissal of the 2010 action. No party contests this determination. The court further concluded that the derivative suit brought on the association's behalf was appropriate. We therefore restrict our analysis to the derivative suit.

[11-13] Henery's and the association's arguments invoke the concepts of claim preclusion and issue preclusion. In the past, we have referred to these concepts as res judicata and collateral estoppel.[40] Claim preclusion bars the relitigation of a claim that has been directly addressed or necessarily included in a former adjudication.[41] Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate.[42] While the doctrines are similar and serve similar purposes, they are distinct.[43] Among other differences, claim preclusion looks to the entire cause of action, but issue preclusion looks to a single issue.[44]

The present action and the 2010 action clearly invoked the same cause of action or claim. In both suits, McGill sought to invalidate the sale of the limited common elements to Henery. But in order for claim or issue preclusion to apply, some nexus must exist between the parties to the successive actions.[45] As previously discussed, McGill brought the 2010 action in his individual capacity and initiated the present proceedings on the association's behalf. This change from an individual to a representative capacity permitted a successive lawsuit.

---

[40] See *Hara, supra* note 7.

[41] See *id.*

[42] See *id.*

[43] *Id.*

[44] See *id.*

[45] See, *Kirkland v. Abramson*, 248 Neb. 675, 538 N.W.2d 752 (1995); *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994).

We addressed a similar scenario in *Hickman v. Southwest Dairy Suppliers, Inc.*[46] In that case, a husband and wife were injured in a motor vehicle accident and the wife passed away from her injuries. The administrator of the wife's estate brought a wrongful death action, and a verdict was returned in favor of the defendants. The husband then filed suit against the same defendants for his own personal injuries, and the defendants claimed that the suit was barred by the prior verdict.

We rejected the defendants' argument and observed that even if the husband had been appointed the administrator of his wife's estate, res judicata or collateral estoppel would likely not have applied. "'In order that parties for or against whom the doctrine of res judicata is sought to be applied may be regarded the same in both actions, the general rule is that they must be parties to both actions *in the same capacity or quality*.'"[47] In the case at bar, by bringing a suit on behalf of the association, it is clear that McGill appeared in a different capacity than in the 2010 action.

[14,15] But Henery and the association argue that McGill's different capacity was irrelevant, because he was in privity with the association in the 2010 action. Both claim preclusion and issue preclusion require an identity or privity of parties.[48] However, an analysis of the principles behind privity and the doctrines of claim preclusion and issue preclusion demonstrate the flaws in this argument.

In analyzing federal law, we have previously observed:

> "There is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel. Privity requires, at a minimum, a substantial identity between the issues in

---

[46] *Hickman v. Southwest Dairy Suppliers, Inc.*, 194 Neb. 17, 230 N.W.2d 99 (1975).

[47] *Id.* at 22, 230 N.W.2d at 103, quoting *American Province Real Estate Corp. v. Metropolitan Utilities Dist.*, 178 Neb. 348, 133 N.W.2d 466 (1965). See, also, Restatement (Second) of Judgments § 36 (1982).

[48] See *R.W. v. Schrein*, 263 Neb. 708, 642 N.W.2d 505 (2002).

controversy and showing the parties in the two actions are really and substantially in interest the same."[49]
And we have stated that the basis of the doctrine of res judicata is that the party to be affected, or someone with whom he or she is in privity, has litigated or has had an opportunity to litigate the same matter in a former action.[50] Similarly, issue preclusion protects litigants from relitigating an identical issue with a party or his or her privy and promotes judicial economy by preventing needless litigation.[51]

In this case, McGill and the association cannot be said to be in privity, because they are not really and substantially the same in interest. In the 2010 action, the district court determined that McGill did not have an interest in contesting the sale to Henery and that, thus, he did not have standing. McGill did not appeal this ruling. In contrast, in representing the interests of the unit owners and the condominium as a whole, the association was necessarily interested in the validity of the sale. We therefore reject the assertion that McGill was in privity with the association.

[16] And it cannot be said that prior to the derivative suit, any party had yet litigated the validity of the sale, either independently or on the association's behalf. The doctrine of issue preclusion recognizes that limits on litigation are desirable, but a person should not be denied a day in court unfairly.[52] We find no error in the district court's conclusion that the derivative proceeding was not barred by claim preclusion or issue preclusion. This assignment of error is without merit.

---

[49] *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 505, 500 N.W.2d 566, 573 (1993), quoting *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271 (10th Cir. 1989).

[50] See *Hickman, supra* note 46.

[51] *Hara, supra* note 7.

[52] *Hickman, supra* note 46.

### (c) Failure to State Claim

The association claims that McGill's complaint failed to state a claim, because the action was filed more than 1 year from the date that the amendment to the declaration was recorded. As discussed above, in order to effect the sale to Henery, the president of the association executed an amendment to the declaration modifying the boundaries of Henery's commercial units and then reconveyed the units to Henery. Section 76-854(b) provides that "[n]o action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than one year after the amendment is recorded."

We reject the premise of this argument—that McGill challenged the amendment to the declaration and not the sale of the limited common elements. The president executed the amendment only to transfer the limited common elements to Henery. The sale of these limited common elements was at the heart of McGill's derivative action, and the evidence established that the limited common elements were sold. Section 76-870 specifies the requirements to convey a portion of the common elements. Therefore, that statute controls.[53]

[17] Even if § 76-854 were controlling, Henery and the association waived any defense based upon the 1-year limitations period. Neither Henery nor the association raised a statute of limitations defense in their answers or motions to dismiss. The association did not raise § 76-854(b) until after judgment had been entered against it. The benefit of the statute of limitations is personal and, like any other personal privilege, may be waived and will be unless pleaded.[54]

---

[53] See *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000).

[54] *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011).

### (d) Equitable Estoppel

Henery and the association assert that equitable estoppel should defeat McGill's claim, because the association accepted the benefits of the sale by using the funds received from Henery. They further argue that McGill also benefited from the sale and that he voted in favor of using the funds.

[18] Equitable estoppel is a bar which precludes a party from denying or asserting anything to the contrary of those matters established as the truth by his or her own deeds, acts, or representations.[55] Before discussing the elements of equitable estoppel, we first reject any argument relating to McGill in his individual capacity. As already discussed, McGill brought the present action derivatively on behalf of the association. Any conduct or benefit relating to McGill as an individual is irrelevant.

Because this is a derivative action, the association is the party to be estopped. And as to the association, the defense clearly fails. To be estopped, the association is required to have possessed "knowledge, actual or constructive, of the real facts."[56] Although the district court ultimately determined that the sale was void, the association had no awareness of its invalidity. As the court observed, "There was merely a misunderstanding as to what the requirements were of such a sale."

Further, it cannot be said that the parties were unable to ascertain the truth or falsity of the pertinent facts.[57] The requirements for the sale were set forth in the Nebraska Condominium Act, and Henery was present when his offer was approved by the association. Thus, the pertinent facts were equally available to all of the parties. This argument is without merit.

---

[55] *Berrington Corp. v. State*, 277 Neb. 765, 765 N.W.2d 448 (2009).

[56] See *id.* at 774, 765 N.W.2d at 455.

[57] See *id.*

## 2. SALE AND ATTORNEY FEES

### (a) Validity of Sale

Henery and the association assert that the sale of the limited common elements was not invalid. And the association further claims that the district court erred in determining that title to the limited common elements remained with the association, rather than Henery.

In arguing that the sale was not invalid, the association again relies upon § 76-854, concerning amendments to the declaration. But as already discussed, the amendment in this case was executed only to carry out the sale to Henery. Regardless of the form of the transfer, the sale was required to comply with the provisions of § 76-870.

Section 76-870 provides, in relevant part:

> (a) Portions of the common elements may be conveyed or subjected to a security interest by the association if persons entitled to cast at least eighty percent of the votes in the association, . . . or any larger percentage the declaration specifies, agree to that action; but all the owners of units to which any limited common element is allocated must agree in order to convey that limited common element or subject it to a security interest. . . . Proceeds of the sale are an asset of the association.

> (b) An agreement to convey common elements or subject them to a security interest must be evidenced by the execution of an agreement, or ratifications thereof, in the same manner as a deed, by the requisite number of unit owners. The agreement must specify a date after which the agreement will be void unless recorded before that date. The agreement and all ratifications thereof must be recorded in every county in which a portion of the condominium is situated and is effective only upon recordation.

> . . . .

> (d) Any purported conveyance, encumbrance, judicial sale, or other voluntary transfer of common elements, unless made pursuant to this section, is void.

Henery and the association also misunderstand the requirements of § 76-870(a). They assert that only Henery's consent was necessary to approve the conveyance, because he owned all of the commercial units to which the limited common elements were allocated. Thus, they do not read the 80-percent requirement as applying to limited common elements. We disagree.

This argument neglects the common ownership of limited common elements. As previously discussed, although allocated to the exclusive use of certain units, limited common elements are nonetheless common elements of the condominium. Because they are common elements, each unit owner possesses an undivided ownership interest in the limited common elements, even if the owner has no right to their use. Section 76-870(a) protects this ownership interest by requiring the approval of 80 percent of the total authorized votes in the association to convey common elements, whether or not the common elements are also limited common elements.

Rather than providing an alternative method of approval, § 76-870(a) provides an additional safeguard as to the sale of limited common elements. Not only must 80 percent of the total votes approve the sale of limited common elements, but the sale must be approved by all of the unit owners entitled to the use of the limited common elements. Without the unanimity requirement, the association could vote to sell limited common elements despite an objection from those unit owners entitled to their use.

Because § 76-870(a) required approval by both 80 percent of the total votes and 100 percent of the unit owners to whom the limited common elements were allocated, the vote was clearly insufficient. While the second requirement was satisfied, the first was not. As the district court determined, at most, the sale to Henery was approved by a vote of only 77.7 percent. Thus, the conveyance fell short of the 80-percent requirement.

Further, there is no evidence of any agreement executed by the unit owners approving the sale, or ratifications thereof, as required by § 76-870(b). Only Henery and the president of the association signed the purchase agreement for the limited common elements. And only the president signed the amendment to the declaration and the warranty deed. We therefore agree with the district court that the conveyance of the limited common elements was void.[58]

Henery and the association raise additional arguments relying upon provisions of the declaration and of the act which are similarly unpersuasive. Section 76-845(b) addresses the "reallocation" of limited common elements between units, not the conveyance of title. Similarly, paragraph 14(B)(ii) of the declaration merely provides that only limited common elements may be incorporated into an adjacent unit or units "then owned by Declarant." Assuming a declarant still exists in this case, the incorporation of limited common elements into an adjacent unit or units necessarily requires the conveyance of title. Such a conveyance is not permitted without compliance with the requirements of § 76-870.

As to the association's assertion regarding the state of title to the limited common elements, we agree that the district court could have been more specific. Rather than indicating that title to the limited common elements remained with the association, it would have been more clear to state that each unit owner retained his or her undivided ownership interest. But because the association was composed of all the unit owners, the district court was not necessarily incorrect. However, we reject the association's premise that title to the limited common elements remained with Henery. The limited common elements are still allocated to the exclusive use of the commercial units. But Henery's ownership of the limited common elements

---

[58] See § 76-870(d).

is shared with all of the unit owners. This assignment of error is without merit.

### (b) Attorney Fees

The association assigns that the district court erred in awarding McGill his attorney fees and costs. It claims that there was no statutory basis to permit the award, that the award included attorney fees incurred in the 2010 action, and that McGill was improperly granted payment of certain "expenses."

[19] The association is correct that some basis must exist to permit an award of attorney fees. We have stated that attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[59] The district court did not mention a statutory basis for the award of attorney fees. Rather, it relied upon the "laws of Derivati[ve] Action lawsuits."

However, a specific statutory basis exists in § 76-891.01, which provides:

> If a declarant or any other person subject to the Nebraska Condominium Act fails to comply with any provision of the act or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award costs and reasonable attorney's fees.

We determine that an award of attorney fees and costs was proper under § 76-891.01.

[20] As to the amount of the award, we find no abuse of discretion regarding the services provided by McGill's attorneys. When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion.[60]

---

[59] See *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

[60] *Lamar Co. v. City of Fremont*, 278 Neb. 485, 771 N.W.2d 894 (2009).

The district court based the amount of the award on an affidavit from one of McGill's attorneys. In the affidavit, the attorney averred that $28,016 in services were provided either in support of the present action or in support of both the 2010 action and the present action. And two attached listings show that numerous services related solely to the 2010 action were excised from McGill's ultimate award.

The association also argues that the district court improperly awarded McGill payment for several miscellaneous expenses charged by his attorneys, including postage, photocopies, and court reporters. Our prior case law has not been consistent in its treatment of such litigation expenses. For example, in *National Am. Ins. Co. v. Continental Western Ins. Co.*,[61] we rejected the argument that litigation expenses were not recoverable under Neb. Rev. Stat. § 44-359 (Reissue 2010), reasoning that there was no rational basis for distinguishing expenses for photocopying or expert consultation from other expenses necessary to a client's representation. However, in *Young v. Midwest Fam. Mut. Ins. Co.*,[62] we construed the same section and concluded that expert witness fees and other litigation expenses were not recoverable.

Since as early as 1922, we have recognized that litigation expenses are not recoverable unless provided for by statute or a uniform course of procedure.[63] But as the above two cases illustrate, we have not been uniform in applying this principle,[64] and our cases have diverged even when construing the same statutory section.

---

[61] *National Am. Ins. Co. v. Continental Western Ins. Co.*, 243 Neb. 766, 502 N.W.2d 817 (1993).

[62] *Young v. Midwest Fam. Mut. Ins. Co.*, 276 Neb. 206, 753 N.W.2d 778 (2008).

[63] See *Toop v. Palmer*, 108 Neb. 850, 189 N.W. 394 (1922).

[64] See *City of Falls City v. Nebraska Mun. Power Pool*, 281 Neb. 230, 795 N.W.2d 256 (2011). See, also, *Bartunek v. Gentrup*, 246 Neb. 18, 516 N.W.2d 253 (1994) (recognizing prior affirmance of award of expert witness fee without statutory basis or uniform course of procedure).

This disparity arises, in part, from the numerous distinct statutory provisions addressing the recovery of attorney fees and costs in certain types of litigation. For example, specific statutes expressly permit the recovery of certain litigation expenses.[65] One such statute authorizes the recovery "for fees necessarily incurred for not more than two expert witnesses" under certain conditions in a condemnation action.[66] In contrast, other statutes, such as § 76-891.01 in the present case, authorize only the recovery of attorney fees and costs.

In *City of Falls City v. Nebraska Mun. Power Pool*,[67] we recognized the inconsistencies in our case law. Although that case specifically dealt with the taxation of costs under Neb. Rev. Stat. § 25-1711 (Reissue 2008), we find it instructive in construing any statute providing only for the recovery of attorney fees and costs. We recognized that it is the province of the Legislature to designate specific items of litigation expense which may be taxed as costs and that the Legislature has done so with respect to certain court costs.[68] Further, shifting of litigation expenses from one party to another could have a chilling effect on a plaintiff's right to seek relief for injury or wrong or subject an unsuccessful defendant to costs greatly in excess of the monetary relief sought by the plaintiff.[69]

[21] We therefore hold that without indication to the contrary, where a statute speaks only to attorney fees and costs, a party may recover his or her attorney fees, the costs of the filing of the action, and any other expenses that are specifically delineated as taxable costs by statute.[70] And we expressly

---

[65] See, e.g., Neb. Rev. Stat. § 76-720 (Reissue 2009).

[66] *Id.*

[67] *City of Falls City, supra* note 64.

[68] See *id.*

[69] *Id.*

[70] See *Kliment v. National Farms, Inc.*, 245 Neb. 596, 514 N.W.2d 315 (1994).

disapprove of our prior cases, such as *National Am. Ins. Co.*, which permitted the recovery of litigation expenses without an explicit basis for doing so.

As previously discussed, § 76-891.01 speaks only to the recovery of attorney fees and costs. But the district court allowed McGill to recover $1,209.14 in expenses, including expenses for postage, photocopies, and court reporters. Our attention has not been directed to any statute which defines taxable costs to include these items. But we are also aware that the parties have not had the opportunity to brief the statutory basis for the items to be claimed as costs, and we think it is appropriate that the district court consider the matter in the first instance.

## VI. CONCLUSION

Based upon the requirements of the Nebraska Condominium Act, the sale and conveyance of the limited common elements were void. The conveyance was neither approved by the requisite vote of the association nor evidenced by an agreement signed by the unit owners. And we further conclude that McGill was not barred from bringing the present derivative action and that a statute authorized the district court to award McGill his taxable costs and reasonable attorney fees. We therefore affirm the award of attorney fees of $28,016, but we vacate the award of costs and expenses and remand the cause to the district court to determine the amount of taxable costs to be awarded to McGill in conformity with this opinion. In all other respects, we affirm the judgment of the district court.

AFFIRMED IN PART, AND IN PART VACATED AND
REMANDED FOR FURTHER PROCEEDINGS.